1
2
3
4
5
6
7

8

## UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

11 | DARREN HANDY, individually and on behalf of all others similarly situated,

        ) Case No.: 1:14-cv-01355 - JLT
)
) ORDER DENYING DEFENDANT'S MOTION
) FOR SANCTIONS UNDER FED. R. CIV. P. 11
)
) (Doc. 17)
)
)
)
)
)

12

       Plaintiff,

13

   v.

14

LOGMEIN, INC.,

15

       Defendant.

16

17        Defendant LogMeIn, Inc. seeks sanctions against Plaintiff Darren Handy and his counsel of

18 record, Matthew Loker, pursuant to Rule 11 of the Federal Rules of Civil Procedure.  (Doc. 17.)

19 Plaintiff opposes the issuance of sanctions.  (Doc. 26.)  The Court heard the oral arguments of the

20 parties at a hearing on April 14, 2014.  Because Plaintiff has a factual basis for the allegations in his

21 Complaint and Mr. Loker made a reasonable factual inquiry prior to filing the complaint, as explained

22 below, Defendant's motion is **DENIED**.

23 **I.    Background**

24        Plaintiff initiated this action by filing a complaint for himself and others similarly situated,

25 seeking to challenge "Defendant's misleading business practices that caused Plaintiff damages."

26 (Doc. 1 at 2, ¶ 1.)  Plaintiff alleged he purchased an application ("app") called Ignition from Defendant

27 for $29.99 on April 4, 2010.  (*Id.* at 3, ¶ 14.)  According to Plaintiff, Ignition was advertised by

28 Defendant as "One app to control all your information," manage files, expand an iPad's possibilities,

and "to be more productive." (*Id.* at 3-4, ¶¶ 15-18.)  Plaintiff alleged the advertising explained: "With one touch, you can directly control all of your computers from your iPad or iPhone.  It's anywhere, anytime access to everything on your PC or Mac – all your files, applications and desktops – right at your fingertips." (*Id.* at 4, ¶ 15.)

Plaintiff alleged that on January 21, 2014, "Defendant abruptly informed consumers . . . that consumers would no longer be able to utilize Ignition the functions for which consumers previously paid $29.99.[1]  (Doc. 1 at 4, ¶ 19.)  Further, Plaintiff alleged Defendant stated that customers who "desired to continue using Ignition are required to purchase an account-level subscription of LogMeIn Pro," which ranges in an annual cost from $99.00 for an individual to $449.00 for small businesses. (*Id.*, ¶ 20.)  Plaintiff asserted that when induced to purchase Ignition, "Defendant did not inform Plaintiff that additional fees beyond the $29.99 already paid to download the app would ever be required to continue usage of Ignition." (*Id.* at 5, ¶ 22.)  Plaintiff alleged that as of August 19, 2014, he could "no longer utilize Defendant's app without paying [an] undisclosed fee now required by Defendant." (*Id.*, ¶ 23.)  Based upon these factual allegations, Plaintiff asserted Defendant is liable for violations of California Business & Professions Code Section 17200, which prohibits unfair, unlawful, and fraudulent business practices.  (*See* Doc. 1 at 6-10.)

Defendant waived service of the Complaint on December 1, 2014.  (Doc. 9.)  Defendant served Plaintiff with a draft of the motion for sanctions on January 9, 2015, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.  (Doc. 17 at 3.)  Defendant filed the motion with the Court, as well

---

[1] Notably, Defendant attaches a document titled, "Changes to LogMeIn Free" which indicates, "After ten years, LogMeIn's free remote access product, LogMeIn Free, is going away. We will be unifying our portfolio of free and premium remote access products into a single offering. This product will be a paid-only offering, and it will offer what we believe to be the best premium desktop, cloud and mobile access experience available on the market today. We will be notifying those impacted by the change in the coming days and weeks . . . **Starting in January, we will gradually migrate users of LogMeIn-branded remote access offerings and Ignition-branded remote access offerings to a single, premium access product**. Please note that once you log into your account there is a seven day window to upgrade."  (Doc. 17-3 at 6-7, emphasis added.)   The document continues in an "Update," which reads, "For owners of LogMeIn Ignition for iPad/iPhone and LogMeIn Ignition for Android While customers who purchased these apps are impacted by this change, we have taken steps to be especially attentive to these customers. LogMeIn Ignition for iPad/iPhone and Android app purchasers will receive significant discounts, as well as generous terms to ease the transition." *Id.* at 7. Moreover, the FAQ's related to the discontinuation of LogMeIn Free poses the question, "What if I paid for the Ignition of iOS or Android app?" and answers it as follows:  "If you purchased the Ignition app, you will receive a special offer regarding an account-level subscription of LogMeIn Pro."  (Doc. 26-2 at 13)  Though the documents do not indicate that users will be *required* to buy any additional product, that is a reasonable implication.

as a motion to dismiss the complaint, on January 30, 2015.[2]  (Docs. 17, 18.)  Plaintiff filed a First

Amended Complaint on February 17, 2015.  (Doc. 19.)  Accordingly, Defendant withdrew the motion

to dismiss.  (Doc. 22.)  However, the amended pleading, filed beyond the safe harbor period, did not

render the motions for sanctions moot. *See Grynberg v. Ivanhoe Energy, Inc.*, 663 F.Supp.2d 1022,

1026 (D. Colo. 2009).

## II.     Legal Standard

Parties and their counsel have an obligation to file non-frivolous actions pursuant to Rule 11 of

the Federal Rules of Civil Procedure, which "is intended to reduce the burden on district courts by

sanctioning, and hence deterring, attorneys who submit motions or pleadings which cannot reasonably

be supported in law or in fact.  *Golden Eagle Distrib. Corp. v Burroughs Corp.*, 801 F.2d 1531, 1536

(9th Cir. 1986); *see also Cooter & Gell v. Hartmarx Corp.* 496 U.S. 384, 393 (1990) ("the central

purpose of Rule 11 is to deter baseless filings in District Court").  Specifically, Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or
> unrepresented party certifies that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances: (1) it is not being
> presented for any improper purpose, such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation; (2) the claims, defenses, and other legal
> contentions are warranted by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law; (3) the factual
> contentions have evidentiary support or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity for further investigation or discovery;
> and (4) the denials of factual contentions are warranted on the evidence or, if specifically
> so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.  The Ninth Circuit explained that "[u]nder the plain language of the rule, when one

party files a motion for sanctions, the court must determine whether any provisions of subdivision (b)

have been violated." *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994).  If Rule 11(b) was

violated, the court "may" impose sanctions.  *Id.* at 1390.

When, as here, the challenged pleading is a complaint, the Court "must conduct a two-prong

---

[2] Where Rule 11 sanctions are initiated by motion, there is "a mandatory 21 day safe-harbor period before a motion for
sanctions is filed with the court." *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1151-52 (9th Cir. 2002)
(citing Fed. R. Civ. P. 11(c)(1)(A).  The Ninth Circuit explained that under Rule 11, "The movant serves the allegedly
offending party with a filing-ready motion as notice that it plans to seek sanctions.  After 21 days, if the offending party has
not withdrawn the filing, the movant may file the Rule 11 motion with the court." *Id.*  Thus, the "safe-harbor" period gives
a litigant "an opportunity to remedy any alleged misconduct before sanctions are imposed." *Id.*; *see also Barber v. Miller*,
146 F.3d 707, 710 (9th Cir. 1998) (the purpose of the notice and safe harbor period is to allow a party "to withdraw the
offending pleading and *thereby escape sanctions*") (emphasis in original)).

1    inquiry to determine (1) whether the complaint is legally or factually baseless from an objective

2    perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing

3    and filing [the complaint]." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian*

4    *v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Therefore, the Court may only find a complaint is

5    "frivolous" and in violation of Rule 11 if it is "'*both* baseless *and* made without a reasonable and

6    competent inquiry.'" *Id.* (quoting *Moore v. Keegan Mgmt. Co.*, 78 F.3d 421, 434 (9th Cir. 1996)

7    (emphasis in original). The inquiry requirement is satisfied if there is "*any* factual basis for [an]

8    allegation." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991) (emphasis added).

9    **III.    Discussion and Analysis**

10        Defendant argues the initial complaint filed by Plaintiff "lacks any objective factual basis."

11    (Doc. 17 at 14.) According to Defendant, "Plaintiff's entire theory of liability rests upon the

12    demonstrably false factual allegation that users who purchased the App no longer have access to it

13    without paying an additional subscription fee." (*Id.*) Defendant maintains that, contrary to Plaintiff's

14    allegations, "all App users—to this day—still have full access to the App without paying any additional

15    subscription fees." (*Id.*) Defendant asserts the subscription fee applies to "LogMeIn's separate and

16    distinct premium service, LogMeIn Pro." (*Id.*)

17        In addition, Defendant argues, "Plaintiff's counsel failed to make a reasonable inquiry into the

18    relevant facts prior to filing suit." (Doc. 17 at 15.) Defendant asserts that it appears Plaintiff relied

19    entirely upon a blog posted by LogMeIn on January 21, 2014, which "merely provided notice of

20    upcoming changes to LogMeIn's suite of products, namely LogMeIn Pro, and alerted users to potential

21    future developments, the details of which would be communicated to users in future messages." (*Id.*)

22    Defendant contends, "Even the most cursory investigation by Plaintiff at any point in time prior to the

23    filing of the Complaint would have revealed that users could still access the App without paying any

24    additional subscription fees."[3, 4]  (*Id.*)

25    _____

26        [3] Despite repeated questioning as to exactly what "cursory investigation" should have been done but was not, the
      Court was not provided a satisfactory response. For the most part, Defendant's position was based upon the unsupported

27    position that counsel had access to in-app messages or e-mails to users without any showing that Plaintiff was aware of
      these communications such that he could inform counsel of them and Plaintiff denies he was aware. Absent awareness by

28    Plaintiff, the Court is unclear how counsel could have discovered them because, apparently, they were not posted on the
      website. (Doc. 17-3 at 3)

                                              4

1    Contrary to Defendant's position, Plaintiff's counsel, Matthew Loker, reports that he "spoke

2    extensively with Plaintiff" prior to filing this action, and "Plaintiff informed [Mr. Loker] that Plaintiff

3    was no longer [able] to use Defendant's App despite paying $29.99 for said App."  (Doc. 26-2 at 2,

4    Loker Decl. ¶ 3.)  Mr. Loker asserts that he also "conducted research regarding Defendant's App by

5    visiting Defendant's website and reading online forums regarding the App."  (*Id.* at 2, ¶ 7.)  Mr. Loker

6    reviewed the "FAQ about Changes to LogMeIn Free" prepared by Defendant, which stated in relevant

7    part:

8    > **Q:   How do I continue using remote access?**
     > A:    To continue using remote access, you will need to purchase an account-level
9    > subscription of LogMeIn Pro that meets your needs based on the number of computers
     > you want to access.  Log in at LogMeIn.com to see pricing details and a link to
10   > purchase.
     > …
11
     > **Q:   What happens if I do not purchase an account-level subscription of
12   > LogMeIn Pro?**
     > A:    Once your 7-day grace period is over, you will no longer be able to remotely
13   > access your Free-enabled computers.  In order to access them, you will need to purchase
     > an account-level subscription of LogMeIn Pro and choose a package that covers all the
14   > computers you want to access.

15   (Doc. 26-2 at 3, Loker Decl. ¶¶ 9-10.)  As noted above, this same document—which Defendant claims

16   applied only to users of LogMeIn Free—informed users of the Ignition App that, "If you purchased the

17   Ignition app, you will receive a special offer regarding an account-level subscription of LogMeIn Pro,"

18   thus implying the need to make an additional purchase. (Doc. 26-2 at 13)  In addition, Plaintiff gave

19   Mr. Loker a screenshot after attempting to login to the App which stated:

20   > **You no longer have access to your computers.**

21   > In order to continue using remote access, you'll need to purchase an account subscription
     > of LogMeIn Pro.  But you can still take advantage of discounted introductory pricing,
22   > with packages starting at **$49/year for two computers**.

23   (Doc. 26-2 at 15, emphasis in original.)  Notably, this language is not restricted only to remote access

24   from a non-mobile device and Mr. Loker declares that it was provided by Plaintiff as to the Ignition

25

26   ---

27   [4]Plaintiff maintains the "[c]ustomers were led to believe that they would no longer be able to utilize the Ignition
     App.  (Doc. 26 at 6.)  Plaintiff contends that in the complaint, he "alleged that consumers who did not sign up for LogMeIn
     Pro accounts were no longer able to utilize the full functions of the app, as the app had been rendered both actually and
28   constructively non-functional by Defendant," which was "due in part to the fact that mobile app users naturally also relied
     on the PC based LogMeIn Free services, which were no longer free."  (Id.)

App.  (Doc. 26 at 3 ¶¶ 13-14)

Further, Mr. Loker asserts that before filing the original pleading he "found thousands of complaints by consumers on online forums."  (Doc. 26 at 6, n. 2.)  Mr. Loker determined "consumers were … quite dissatisfied with the forced migration and the effect it had on their ability to meaningfully utilize the Ignition App."  (Doc. 26-2 at 5, Loker Decl. ¶ 25.)  Based upon his review of the websites and the screenshot provided by Plaintiff, Mr. Loker concluded the "pre-filing research established a violation of Cal. Bus. & Prof. Code § 17200."[5]  (*Id.* at 4, ¶ 17.)

Despite this recitation of investigatory effort, Defendant asserts that the allegations of Plaintiff's complaint appeared to be based only upon a blog post the company published in January 2014.  (Doc. 17 at 11)  However, as described above, Mr. Loker clarifies[6] that the facts and theories of the case were not based upon the review of only one post.  (Doc. 26-2 at 2-4)  Further, while Defendant contests the facts presented and the legal conclusions, the information contained on the website, the blog and the screenshot encouraged the belief Plaintiff and others like him were not going to be able to use the App as they had in the part and would not have remote access to off-site computers.[7]  This is sufficient to provide a factual basis for the allegations that Defendant engaged in misleading business practices.  *See Brubaker*, 943 F.2d at 1377 ("*any* factual basis for [an] allegation" will satisfy the requirements of Rule 11); *see also Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (even weak and circumstantial evidence establishes a factual basis sufficient to avoid sanctions under Rule 11).   Though the investigation did not yield the determination that, in fact, Ignition users continued to have access to the app, the evidence provided by Plaintiff's counsel

---

[5] In the reply brief, Defendant argues that Plaintiff fails to provide "any description of what investigation Plaintiff's counsel undertook prior to filing the original complaint."  (Doc. 38 at 11, emphasis omitted.)  However, Mr. Loker makes it clear that he reviewed the websites and screenshot provided by Plaintiff *prior* to filing the Complaint, and that it was "[o]nly after this investigation" that "[he] moved forward and lodged the Complaint."  (Doc. 26-2 at 4, Loker Decl. ¶ 17.)

[6] Despite the interpretation set forth by Defendant's counsel, Mr. Loker's reference to discussion occurring with co-counsel related to the "theories of recovery, which are referenced in greater detail in the Declaration of Adrian R. Bacon" (Doc. 26-2 at 4), was not intended to suggest that Mr. Loker consulted with Mr. Bacon before filing the complaint because, of course, Mr. Bacon does not claim to have had any role in this matter.  Rather, Mr. Loker's statement was merely a shorthand manner of setting forth the theories of recovery without having to restate them.

[7] Defendant notes Plaintiff admits he received the July 17, 2014 e-mail which informed him "[Y]our Ignition app will continue to work as it always has . . ."  (Doc. 19 at 7)  However, in light of Plaintiff's attempt to use the app which resulted in the message that, "You no longer have access to your computers" (Doc. 26-2 at 15) and the confusing and changing messages provided by Defendant before this time, why the July 2014 e-mail should have caused him to believe that, in fact, he *did* have access, is unclear.

demonstrates that the contrary conclusion was formed reasonably.

Consequently, the Court does not find the complaint was factually baseless and finds Mr. Loker conducted a reasonable and competent inquiry into the facts prior to filing the action on behalf of Plaintiff.

**IV.     Conclusion and Order**

The record does not establish that this is "one of the 'rare and exceptional' cases that warrant the extraordinary remedy of Rule 11 sanctions." *See Kelter v. Associated Fin. Group*, 382 Fed. App'x 632 (9th Cir. 2010) (quoting *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).  Accordingly, **IT IS HEREBY ORDERED**:  Defendant's motion for sanctions under Rule 11 (Doc. 17) is **DENIED**.

IT IS SO ORDERED.

Dated:   **April 14, 2015**                              **/s/ Jennifer L. Thurston**
                                                       UNITED STATES MAGISTRATE JUDGE