UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN HANDY, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LOGMEIN, INC.,<br><br>　　　　Defendant. | Case No.: 1:14-cv-01355 - JLT<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 32) |

　　　　Defendant LogMeIn, Inc. seeks dismissal of the Amended Complaint filed by Plaintiff Darren Handy pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 32.) In particular, Defendant argues Plaintiff has failed to meet the heightened pleading standard for fraud claims and has failed to state a claim. Plaintiff opposes dismissal, arguing the factual allegations are sufficient. (Doc. 36.) The Court heard the oral arguments of the parties at a hearing on April 14, 2014. Because the Court finds Plaintiff has stated claims but has failed to provide sufficient factual detail to state all of the claims he identifies, Defendant's motion is **GRANTED IN PART**.

**I.　　Background**

　　　　Plaintiff initiated this action by filing a complaint for himself and others similarly situated, seeking to challenge "Defendant's misleading business practices that caused Plaintiff damages." (Doc. 1 at 2, ¶ 1.) Plaintiff filed a First Amended Complaint on February 17, 2015. (Doc. 19.) Defendants filed a motion to dismiss on March 10, 2014, asserting Plaintiff "fails to satisfy Federal Rule of Civil

Procedure 9(b)'s heightened pleading standard" for his claims. (Doc. 32 at 2.) Defendant contends the complaint should be dismissed without leave to amend, arguing Plaintiff cannot allege facts sufficient to cure the defects of the complaint.

## II.      Factual Allegations

Plaintiff alleges he purchased an application called Ignition from Defendant for $29.99 on April 4, 2010. (Doc. 19 at 3, ¶ 14.) According to Plaintiff, Ignition was advertised by Defendant as "[o]ne app to control all your information," manage files, expand an iPad's possibilities, and "to be more productive." (*Id.* at 4, ¶¶ 18-21.) Plaintiff alleges the advertising explained: "With one touch, you can directly control all of your computers from your iPad or iPhone. It's anywhere, anytime access to everything on your PC or Mac – all your files, applications and desktops – right at your fingertips." (*Id.*, ¶ 18.)

Plaintiff asserts that when he purchased Ignition, he "relied upon this representation that this fee would permit Plaintiff to use Defendant's app uninterrupted and for the foreseeable future." (Doc. 19 at 4, ¶ 15.) His reliance was "based upon the fact that Defendant did not warn Plaintiff, nor consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, or that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices." (*Id.* at 3-4, ¶ 15.) Plaintiff alleges, "Had Defendant warned Plaintiff that additional fees may apply, Plaintiff would have reconsidered Plaintiff's purchase of Defendant's app." (*Id.* at 4, ¶ 16.) Plaintiff alleges the failure to disclose the potential of additional fees "unfairly induced Plaintiff's purchase of Defendant's app." (*Id.* at 4, ¶ 17.)

According to Plaintiff, "Following years of benefiting from Defendant's marketing, Defendant abruptly informed consumers on January 21, 2014 that consumers would no longer be able to utilize Ignition for the functions which consumers previously paid $29.99 as consideration thereto." (Doc. 19 at 5, ¶ 22.) Plaintiff alleges Defendant posted a message on its website, stating that beginning in January, the company would "gradually migrate users of LogMeIn-branded remote access offerings and Ignition-branded remote access offerings to a single, premium access product." (*Id.*, ¶ 24.) Plaintiff asserts that customers who "desired to continue using Ignition are required to purchase an account-level subscription of LogMeIn Pro," which ranges in an annual cost from $99.00 for an individual to $449.00

for small businesses.  (*Id.*, ¶ 23.)  In addition, Plaintiff asserts he was informed that "[t]o continue using remote access, [he] would need to purchase an account-level subscription of LogMeIn Pro." (*Id.*, ¶ 26.)

Plaintiff alleges that after the notice was posted on the website, he received a message from Defendant stating:

> **You no longer have access to your computers.**
>
> In order to continue using remote access, you'll need to purchase an account subscription of LogMeIn Pro. But you can still take advantage of discounted introductory pricing, with packages starting at $49/year for two computers.

(Doc. 19 at 6, ¶ 28.)  Plaintiff asserts he "was misled by Defendant into believing that the Ignition App, which he paid $29.99 for, had been shut down, and would no longer allow him remote access to his desktop at his office." (*Id.*, ¶ 29.)  Because he believed "Defendant's statements that remote access would no longer be available to Plaintiff," he "incurred additional expenses, including travel expenses, cost of fuel, and additional commuting time to and from his physical office, and also lost value stemming from his discontinuation of use of a product he had already paid $29.99 for." (*Id.*, ¶ 30.) Plaintiff asserts Defendant's messages to customers were "part of a widespread and systemic ruse to unfairly, fraudulently and unlawfully induce said consumers into purchasing paid subscription services rather than continue using the already purchased, free and clear, Ignition app services." (*Id.*, ¶ 32.)

Further, Plaintiff asserts he received a message from Defendant on July 17, 2014, which stated: "While your existing Ignition app will continue to work as it always has, it will no longer receive updates and bug fixes. However, you may switch to the new LogMeIn for iOS/Android app at any time. It's free to download and will work with a Pro account." (Doc. 19 at 7, ¶ 33.)  According to Plaintiff, "Because regular updates and bug fixes are a necessary component of the continued use of any smart phone application, Plaintiff and other consumers' Ignition apps were rendered obsolete by Defendant's decision, forcing them to either discontinue using the services for which they already previously paid, or subscribe to a LogMeIn Pro subscription account, at additional costs." (*Id.*, ¶ 34.)  He asserts, "As of August 19, 2014, Plaintiff reasonably believed that he could no longer utilize Defendant's app without paying the undisclosed fee now required by Defendant." (*Id.* at 7-8, ¶ 39.)

Plaintiff contends that, "[r]egardless whether Defendant's representations to Plaintiff were true or untrue, such statements had a tendency to mislead Plaintiff and other similarly situated consumers,

3

who relied upon such representations and either ceased use of the app." (Doc. 19 at 7, ¶ 37.) He asserts Defendant "improperly induced thousands of other consumers to either discontinue usage of [the] app or pay a substantial yearly fee." (*Id.* at 8, ¶ 41.) Based upon these factual allegations, Plaintiff asserts Defendant is liable for violations of California Business and Professions Code §§ 17200 and 17500, which prohibit false advertising and unfair, unlawful, and fraudulent business practices. (*See* Doc. 19 at 10-14.)

In response, Defendant filed the motion to dismiss now pending before the Court, seeking dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 32.)

### III.     Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to

support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

### IV.     Heightened Pleading Standards

Claims that are "grounded in fraud" are subject to the heightened pleading requirements of Rule 9(b), which requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A plaintiff's factual allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Importantly, when a plaintiff alleges that the defendants engaged in "a unified course of fraudulent conduct" and relies upon that conduct to support a claim, the plaintiff's claim is "grounded in fraud," and must satisfy the particularity requirement of Rule 9. *Kearns*, 567 F.3d at 1125. Thus, the heightened pleading standards may be applied to factual allegations of a complaint even where fraud is not an element of a claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

Here, Plaintiff's claims under California Business and Professions Code §§ 17200 and 17500 are subject to the heightened pleading standards, because the claims are grounded in misleading activity by the defendant. *See Kearns*, 576 F.3d at 1125 (holding "Rule 9(b)'s particularity requirement applies" to claims raised under Cal. Bus. & Prof. Code § 17200); *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp.2d 1073, 1085-86 (E.D. Cal. 2009) (where the plaintiff alleged the defendant knowingly made misrepresentations to the public and "engaged in a fraudulent course of conduct," the plaintiff was required to meet the heightened requirements of Rule 9(b) to state a claim under Cal. Bus. & Prof Code § 17500); *Lanini v. JPMorgan Chase Bank*, 2014 U.S. Dist. LEXIS 47348 at *33 (E.D. Cal. Apr. 4, 2014) (dismissing the plaintiffs' claim for a violation of Cal. Bus. & Prof.

1  Code §17200 for failure to meet the Rule 9(b) pleading requirements).

2  To avoid dismissal for failure to meet the heightened pleading standards under Rule 9(b), "[a]
3  complaint would need to state the time, place, and specific content of the false representations as well
4  as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,
5  1066 (9th Cir. 2004); *see also Kearns*, 567 F.3d at 1126 (the plaintiff must articulate the "who, what,
6  when, where, and how" of the fraud alleged"). "Many courts in California have applied a relatively
7  straightforward test for the application of Rule 9(b) to label-based fraud claims. The "who" are the
8  defendants; the "what" are their allegedly misleading claims; the "when" is the proposed class period,
9  during which those claims were made; the "where" is the offending label; and the "how" is the
10 plaintiff's explanation why the defendant's claims are misleading." *In re 5-hour ENERGY Mktg. &*
11 *Sales Practices Litig.*, 2014 WL 5311272, at *17 (C.D. Cal. Sept. 4, 2014). If allegations of fraud do
12 not meet the heightened pleading standard, the "averments . . . should be disregarded, or stripped from
13 the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

14 **V.     Discussion and Analysis**

15 Under California's False Advertising Law ("FAL"), it is unlawful for any person or entity to
16 make untrue and misleading statements in advertising. Cal. Bus. & Prof. Code § 17500. Similarly,
17 California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business
18 act or practice." Cal. Bus. & Prof. Code § 17200. To have standing to state a claim under either
19 statute, a plaintiff must have suffered an injury in fact, which may be shown when he or she "expended
20 money due to the defendant's acts . . .; (2) lost money or property; or (3) been denied money to which
21 he or she has a cognizable claim." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D.
22 Cal. 2010). Further, to state a cognizable claim, a plaintiff "must allege [the] Defendant's
23 representations are likely to deceive a reasonable consumer." *Red v. Kraft Foods, Inc*., 2012 U.S. Dist.
24 LEXIS 164461 at *6, 2012 WL 5502754 (C.D. Cal. Oct. 25, 2012) (citing *Williams v. Gerber Prods*.
25 *Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Even a true statement can mislead a reasonable consumer if it
26 is actually misleading or has the capacity, likelihood or tendency to deceive or confuse members of the
27 public. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).

28 Here, Defendant argues Plaintiff's FAL and UCL claims fail because Plaintiff does not "identify

any alleged misrepresentation by LogMeIn that customers would only be required to pay a one-time fee of $29.99 for the App and that updates and bug fixes would continue indefinitely." (Doc. 32 at 14, emphasis omitted.) Defendant asserts this omission "is fatal to Plaintiff's claim[s]." (*Id.*, citing *e.g.*, *Kearns*, 567 F.3d at 1126; *Minkler v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 116169 at *22 (N.D. Cal. Aug. 20, 2014); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 149732 at *42 (C.D. Cal. Sept. 4, 2014); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012); *McKinney v. Google, Inc.,* 2011 U.S. Dist. LEXIS 97958 at *18 (N.D. Cal. Aug. 30, 2011). In addition, Defendant asserts:

> [E]ven if the advertisements in referenced in the Amended Complaint said anything about the fees and continued technical support for the App (and they indisputably do not), Plaintiff still fails to allege any details regarding the "who, what, when, where, and how of the misconduct alleged." *See Kearns*, 567 F.3d at 1126; *see also Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."). There are no facts whatsoever in the Amended Complaint regarding who made the alleged misrepresentations, when the alleged misrepresentations in the advertisements were made, the context of any of the purported misrepresentations, or why any of the alleged misrepresentations were false when made.

(Doc. 32 at 15.)  Finally, Defendant argues the FAL and UCL claims fail because Plaintiff "does not allege any facts to establish reliance." (*Id.* at 16, citing *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014.)

Plaintiff maintains that he has alleged facts sufficient to support his claims.  (Doc. 36 at 7.)  According to Plaintiff,

> [The] First Amended Complaint cities to specific actions taken by Defendant that Plaintiff alleges to be unfair and deceptive, specific material omissions and misrepresentations made by Defendant surrounding it's forced migration of Ignition users to LogMeIn Pro, and its requirement that users who wanted to continue meaningfully using the Ignition app's services would now, unexpectedly, have to pay hefty monthly subscription fees for a necessary companion service that was previously advertised and offered as free as an incentive to induce the purchase of Ignition.

Plaintiff contends this "factual detail is clearly and thoroughly alleged to meet Rule 9(b)'s heightened pleading standards."  (*Id.*)

### A.  Plaintiff's False Advertising Law (§ 17500) Claim

It is unlawful for any company or employee thereof to make or disseminate any statement concerning real or personal property or professional services, which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  A

7

false advertising claim under this section may be brought "where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998). Thus, the FAL proscribes "not only those advertisements which have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Id.* (emphasis omitted). In addition, a plaintiff may state a claim under the FAL for fraudulent omissions by a defendant. *See Ehrlich v. BMW of North Am.*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010).

### 1. Alleged omissions by Defendant

Plaintiff alleges Defendant mislead consumers by "failing to disclose that the app would be rendered obsolete by Defendant's own business decisions, at a later time, and that considerable subscription fees would be required to continue using the applications." (Doc. 19 at 10, ¶ 61.) Thus, Plaintiff's claim for a violation of the FAL is based in part upon the theory that Defendant is liable for fraudulent omissions.

To state a cognizable claim for a fraudulent omission, a plaintiff must allege the defendant's omission was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." *Ehrlich*, 801 F. Supp. 2d at 916 (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007)); *see also Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 835 (2006). Under California law,

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (quoting *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986)). A fact is deemed material "if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (2011) (internal quotation marks, citation omitted); *see also Elias v. Hewlett-Packard Co.*, 950 F.Supp. 2d 1123, 1134-35 (N.D. Cal. 2013) (same).

Here, Plaintiff asserts that when he purchased Ignition, he relied upon the facts that "Defendant

did not warn Plaintiff, nor consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, or that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices." (Doc. 19 at 3-4, ¶ 15). Notably, however, it is not clear to what the phrase later "business practices" refers. It is unclear whether this relates to Defendant's decision to stop providing updates and bug fixes or whether this refers to the migration to the Pro version of the App or something else entirely.

On the other hand, Plaintiff alleges, "Had Defendant warned Plaintiff that additional fees may apply, Plaintiff would have reconsidered Plaintiff's purchase of Defendant's app." (*Id.* at 4, ¶ 16.) He contends the failure to disclose the potential of additional fees "unfairly induced Plaintiff's purchase of Defendant's app." (*Id.*, ¶ 17.) Plaintiff alleges that the fact that there would be no further fees imposed and Ignition was important to his determination to purchase Ignition—and as such, it was a material fact. *Collins*, 202 Cal. App. 4th at 256.

Because Plaintiff alleges Defendant failed to disclose the material fact that further fees may be imposed, he has alleged sufficient facts for a fraudulent omission in violation of the FAL. *See LiMandri*, 52 Cal.App. 4th at 336. However, he fails to provide sufficient factual allegations to support that Defendant made a material omission related to the later "business practices" or, indeed, exactly what this means. Consequently, Defendant's motion to dismiss Plaintiff's first cause of action, to the extent it is based upon fraudulent omissions, is **GRANTED in PART**.

### 2. Alleged misrepresentations by Defendant

Plaintiff asserts Defendant is also liable for violations of the FAL for "making misrepresentations and untrue statements about the Ignition App." (Doc. 19 at 10.) Plaintiff alleges, "In agreeing to pay the $29.99, Plaintiff actually relied upon *this representation* that this fee would permit Plaintiff to use Defendant's app uninterrupted and for the foreseeable future." (Doc. 19 at 3, ¶ 15.) However, he fails to identify or describe what statements constituted "this representation." Because Plaintiff fails to identify the "specific content of the false representations," his allegations related to misrepresentations made when he purchased Ignition are insufficient to meet the heightened pleading standards of Rule 9(b). *See Edwards*, 356 F.3d at 1066; *see also Kearns*, 567 F.3d at 1126.

Along the same lines, Plaintiff fails to identify any representation made by Defendant that

assured him that updates and bug-fixes would be provided by Defendant for any period of time. *Minkler v. Apple, Inc.*, 2014 WL 4100613, at *7 (N.D. Cal. Aug. 20, 2014) ("Plaintiff has failed to identify any specific statement by Apple that expressly indicates that Apple Maps would always work flawlessly and without error.") Likewise, he alleges no facts that demonstrate that Defendant had an obligation to provide updates and bug fixes.[1]

On the other hand, Plaintiff alleges facts sufficient to establish reliance upon the statements made by Defendant regarding the termination of Ignition. Plaintiff alleges that after LogMeIn posted a notice on its website informing customers that it would "gradually migrate users of LogMeIn-branded remote access offerings *and* Ignition-branded remote access offerings to a single, premium access product." (Doc. 19 at 5, ¶ 24, emphasis added.) Plaintiff was notified that "[t]o continue using remote access, [he] would need to purchase an account-level subscription of LogMeIn Pro." (*Id.*, ¶ 26.) In addition, Plaintiff received a message from Defendant stating[2]:

> **You no longer have access to your computers.**
>
> In order to continue using remote access, you'll need to purchase an account subscription of LogMeIn Pro. But you can still take advantage of discounted introductory pricing, with packages starting at $49/year for two computers.

(Doc. 19 at 6, ¶ 28.) Though Plaintiff later learned he still had access to his computers through Ignition, he was misled into thinking he no longer had remote access. (*Id.*, ¶ 29.) As a result, he incurred additional expenses, including travel expenses, cost of fuel, and additional commuting time to and from his physical office, and also lost value stemming from his discontinuation of use of a product he had already paid $29.99 for." (*Id.*, ¶ 30.)

Because Plaintiff identifies statements that were made, when and where they were made and explains why the statements were false and/or misleading, the allegations are sufficiently specific to give Defendant notice of the claims. Further, he asserts the representations were made for the purpose of making customers believe they no longer were able to use the Ignition App and were required to

---

[1] As noted above, if Plaintiff intended the allegations to relate to updates and bug fixes to indicate a material omission, he has failed to plead the facts to support a claim in this regard.

[2] The first amended complaint does not indicate that this message was provided by Defendant related to Plaintiff's attempted use of Ignition or LogMeInFree or was given in some other context. The implication of the pleading is that it relates to Ignition. Plaintiff should clarify this issue in his second amended complaint.

purchase LogMeIn Pro.  Plaintiff alleges that he relied upon these representations to his detriment, and incurred additional expenses, because he did not use the App after being informed he no longer had access to his computers via Ignition.  These factual allegations are sufficient to state a claim under the FAL.  *See Day v. AT&T Corp.*, 63 Cal. App. 4th at 332; *Chacanaca*, 752 F. Supp. 2d at 1125.

### B.  Plaintiff's Unfair Competition Law (§ 17200) Claim

Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under §17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability").

Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."  *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-39 (1994).  Thus, the "unlawful" prong requires an underlying violation of law.  *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178 (2001).  An "unfair" practice under section 17200 is one "whose harm to the victim outweighs its benefits."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).  Finally, a "fraudulent" act or practice under § 17200 is "one which is likely to deceive the public," and "may be based on misrepresentations … which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive."  *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1474, 49 Cal.Rptr.3d 227 (2006).

Significantly, as with a False Advertising Law claim, a plaintiff may demonstrate a violation of the "fraudulent" prong of the UCL by showing that reasonable "members of the public are likely to be deceived."  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008); *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1261 (2006).  Here, as detailed above, Plaintiff alleges facts sufficient to support a claim under Cal. Bus. & Prof. Code § 17500 as to the omission related to the imposition of later fees.  The Unfair Competition Law and False Advertising are related such that "any violation of the false advertising law . . . necessarily violates the UCL.'"

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983)).  As a result, Plaintiff's allegations are likewise sufficient to support a claim that Defendant engaged in unlawful and fraudulent business practices in violation of § 17200.

## VI.   Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss be **GRANTED IN PART** as follows:

1. The motion to dismiss the claims under California's Bus. & Prof. Code § 17500 and California's Bus. & Prof. Code § 17200 related to the omission regarding that additional fees may be imposed after the purchase is **DENIED**;

2. The motion to dismiss the claims under California's Bus. & Prof. Code § 17500 and California's Bus. & Prof. Code § 17200 related to claimed misrepresentations and the omission that subsequent business decisions would render the App obsolete, is **GRANTED** with 21 days leave to amend.

IT IS SO ORDERED.

Dated:   **April 15, 2015**                    /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE