1  KAZEROUNI LAW GROUP, APC
2  Abbas Kazerounian, Esq. (249203)
   ak@kazlg.com
3  Matthew M. Loker, Esq. (279939)
4  ml@kazlg.com
   245 Fischer Avenue, Unit D1
5  Costa Mesa, CA 92626
6  Telephone: (800) 400-6808
7  Facsimile: (800) 520-5523

8

9  HYDE & SWIGART
   Joshua B. Swigart, Esq. (225557)
10 josh@westcoastlitigation.com
11 2221 Camino del Rio South, Suite 101
   San Diego, CA 92108
12 Telephone (619) 233-7770
13 Facsimile: (619) 297-1022

14
   *Attorneys for Plaintiff*,
15 Darren Handy

16

LAW OFFICES OF TODD M.
FRIEDMAN, P.C.
Todd M. Friedman, Esq. (216752)
tfriedman@attorneysforconsumers.com
Adrian R. Bacon, Esq. (280332)
abacon@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228

17              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF CALIFORNIA
18

19 DARREN HANDY,                    Case No.: 14-cv-1355 JLT
20 INDIVIDUALLY AND ON
   BEHALF OF ALL OTHERS            CLASS ACTION
   SIMILARLY SITUATED,
21                                  SECOND AMENDED COMPLAINT
22            Plaintiff,            FOR DAMAGES FOR VIOLATIONS
                                    OF CALIFORNIA BUSINESS AND
23            v.                    PROFESSIONS CODE § 17200

24 LOGMEIN, INC.,                   JURY TRIAL DEMANDED

25            Defendant.            HON. JENNIFER L. THURSTON

26 ///

27 ///

28 ///

---

**SECOND AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF   1 OF 20**

## INTRODUCTION

1.   DARREN HANDY ("Plaintiff"), by Plaintiff's attorneys, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, to challenge the illegal actions LOGMEIN, INC. ("Defendant") with regard to Defendant's misleading business practices that caused Plaintiff damages.

2.   Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4.   Unless otherwise stated, Plaintiff alleges that any violations by Defendant were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid any such violation.

5.   Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

6.   Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than that of Defendant, a company whose principal place of business and State of Incorporation are in the State of Massachusetts.  In addition, the matter in controversy exceeds $5,000,000 exclusive of interest of costs.  Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of Kern, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

8. Because Defendant conducts business within the State of California, personal jurisdiction is established.

PARTIES

9. Plaintiff is an individual who resides in the County of Kern, State of California and a "person" as defined by Cal. Bus. & Prof. Code § 17201.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is a company whose State of Incorporation and principal place of business is in the State of Massachusetts.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant is a worldwide company that offers consumers the ability for remote control, file sharing, systems management, data backup, business collage and on-demand customer support for various operating systems.

FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff is an individual residing within the State of California.

13. Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendant conducted business in the State of California.

14. On April 4, 2010, Plaintiff purchased an "app" called Ignition from Defendant for $29.99 via iTunes.  Ignition is a an extension/add-on feature to LogMeIn's PC-based remote access services, which allows users to utilize LogMeIn's PC-based virtual private network (VPN) services by use of an application that is downloaded onto a consumer's smartphone or tablet device.

15. Defendant's Ignition app was advertised as a one-and-done product, to be purchased for $29.99 free and clear, with the intent and implication of it being used as a premium and supplemental companion product to LogMeIn's free PC-based offering ("LogMeIn Free").  While LogMeIn had other services at the time Ignition was introduced, the vast majority of users, including Plaintiff, utilized LogMeIn Free.

16. LogMeIn Free was a VPN service, offered for and advertised as "free" by Defendant.  LogMeIn Free allowed users to remotely access a desktop PC from a remote location, by using another desktop or laptop computer, which was connected to the Internet.  LogMeIn Free allowed users to sit at one computer, at any location, and access a different computer as if you were sitting in front of the connected computer itself.  Defendant offered and advertised these remote access services as free of charge for years.  Even the name of the product had the word "Free" as part of its hook to entice customers to download and utilize Defendant's products.

17. Defendant also, at some point prior to January 21, 2014, introduced a premium service known as LogMeIn Pro, which was offered for an annual fee, and offered some additional features, including remote printing and file sharing.

18. The vast majority of Defendant's customers, including Plaintiff, from any time prior to January 21, 2014, utilized LogMeIn Free as opposed to paid subscription services.  In fact, many popular review sites recommended that consumers forgo the expensive alternative LogMeIn Pro as unnecessary for the average consumer.[1]   The vast majority of Defendant's customers who were Ignition users, including Plaintiff, from any time prior to January 21,

---

[1] See for instance: http://www.pcworld.com/article/231929/logmein_free.html

2014, likewise utilized and relied upon LogMeIn Free, and the free use of this companion product.

19. In agreeing to pay $29.99 for Ignition, Plaintiff actually relied upon Defendant's representations (both by omission and affirmative misleading statements as described in more detail below) that this fee would permit Plaintiff to use Defendant's app uninterrupted and for the foreseeable future, without the requirement of further payments or additional fees.  Plaintiff further understood that by agreeing to pay $29.99, LogMeIn Free's companion service would remain available at the same rates as they were at the time of his purchase of Ignition.  Said reliance is based upon the fact that Defendant did not warn Plaintiff, nor consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, or that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices.  These business practices include, as discussed in more detail below, changing the pricing model for companion services in a material fashion, and charging Plaintiff and other similarly situated consumers undisclosed and unexpected fees to continue their same level of use of service.  These business practices also include, as discussed in more detail below, Defendant's announcement that it would no longer offer updates and bug fixes for the Ignition App, unless users purchased an expensive LogMeIn Pro subscription account.

20. Had Defendant warned Plaintiff that additional fees may apply, or that bug fixes and updates would no longer be provided, Plaintiff would have reconsidered Plaintiff's purchase of Defendant's app.

21. Failure to disclose that additional fees may apply unfairly induced Plaintiff's purchase of Defendant's app.  This omission was material to Plaintiff's purchase, and induced his reliance to purchase Ignition.  Further, Defendant

1
2
had a duty to disclose to Plaintiff and other Ignition app purchasers that additional fees may apply to their purchase at a later time.

3
4
5
22.  The vast majority of Defendant's customer base of Ignition users relied on the free use of this companion product, and its "free" availability was a primary and material motivating factor in their decision to purchase Ignition.

6
7
8
9
10
23.  Defendant failed to inform consumers, at the time of their purchase of Ignition, that any additional fees would be required at a later time to continue uninterrupted use of the Ignition App, and its companion products and services.

11
12
13
14
15
16
24.  This failure to disclose constitutes a misrepresentation by omission, as Defendant had a duty to disclose this material fact, which was not known by Plaintiff or other similarly situated consumers, because Defendant possessed exclusive knowledge of its own pricing schemes and business strategies.  With regard to Defendant's app, Defendant advertises Ignition as "One app to control all your information."  In explanation, Defendant stated:

17
18
19
> With one touch, you can directly control all of your computers from your iPad or iPhone.  It's anywhere, anytime access to everything on your PC or Mac – all your files, applications and desktops – right at your fingertips.

20
25.  Moreover, Defendant advertises Ignition as "One app to manage your files."

21
22
23
24
25
> You don't have to be at your computer or even access your computer or to work with your files on the go.  Now you can grab files from your computer and save them directly to your iPad/iPhone to create your own file system.  And you can use your iPad/iPhone to transfer files between computers.  With everything you need in the palm of your hand, you're free to go.

26
27
26.  Next, Defendant advertises Ignition as "One app to expand your iPad's possibilities."

28
> Want to use your iPad as your primary device while on the road?  Go for it.  Ignition combines the ease of your iPad with

---

**SECOND AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF    6 OF 20**

the strength of your computers.  One touch opens any file on your home or work computer.  Then you can edit it with your computer applications.  And save it down to your iPad so you can view and open files, even when you're away from Wi-Fi/3G.

27.  Finally, Defendant advertises Ignition as "One app to be more productive."

Be fast, be mobile, and get stuff done quickly and easily.  You don't have to figure out a workaround or have to change the way you normally work.  You can get everything on your computers, and you can view and share anything on or offline.  With Ignition, you have the flexibility and freedom to work anywhere, anytime.

28.  These advertisements, among others, further misled consumers by encouraging them to purchase Ignition as a companion product to LogMeIn Free.  These advertisements, among others, held Ignition out to be a side-by-side product sold in conjunction with existing VPN services, not as a stand alone product to be used in isolation.  Further, Ignition was in fact a side-by-side companion product to be used in conjunction with existing VPN services, namely with LogMeIn Free.

29.  Defendant therefore had a duty to disclose that it would, or might, later materially alter its pricing model and/or servicing model for companion products and services, which would impact consumers' use of the products they were purchasing (i.e. Ignition).

30.  Following years of benefiting from Defendant's marketing, Defendant abruptly informed consumers on January 21, 2014 that consumers would no longer be able to utilize Ignition for the functions which consumers previously paid $29.99 as consideration thereto.

31.  Defendant engaged in a classic bait and switch, through which a large community of Defendant's customers, including Plaintiff Darren Handy ("Plaintiff"), were induced to pay $29.99 for an expensive premium

1
2
3

smartphone and tablet application, only to be told at a later time that they would have to pay a hefty fee for subscription services to receive the same level of service they thought they had previously purchased in full.

4
5
6
7

32. According to Defendant, consumers that desired to continue using Ignition are required to purchase an account-level subscription of LogMeIn Pro.  Said subscriptions range from $99.00 per year for individuals and up to $449.00 per year for small businesses.

8
9
10
11
12

33. On or around January 21, 2014, Defendant posted A message on its website, stating "[s]tarting in January, we will gradually migrate users of LogMeIn-branded remote access offerings and Ignition-branded remote access offerings to a single, premium access product."[2]

13
14
15
16
17

34. Defendant answered consumers' legitimate outcries to this announcement by admitting that the reason it was making this change, and pushing its customers to sign up for a paid subscription service, rather than continue using the products its customers had already paid for, was to migrate customers to a paid subscription service, in order to generate more revenues:

18
19
20

"In order to address the evolving needs of our customers, we will be unifying our portfolio of free and premium remote access products into a paid-only offering"[3]

21
22
23

35. Specifically, Defendant informed Plaintiff that "[t]o continue using remote access, [Plaintiff would] need to purchase an account-level subscription of LogMeIn Pro…"

24
25

36. Since Plaintiff was not interested in paying additional amounts beyond the $29.99 required to purchase Defendant's app, Plaintiff refused to make further

26
27
28

[2] http://blog.logmein.com/it-management/logmein-changes; (last visited February 17, 2015).

[3] http://help.logmein.com/SelfServiceKnowledgeRenderer?type=FAQ&id=kA0a 0000000shH8CAI; (last visited February 17, 2015).

1

2   37. Thereafter, Plaintiff received a message from Defendant when trying to log

3        into his LogMeIn Free account on his computer that stated the following:

4                    **You no longer have access to your computers.**

5

6                    In order to continue using remote access, you'll need to
                     purchase an account subscription of LogMeIn Pro.  But you
7                    can still take advantage of discounted introductory pricing,
                     with packages starting at $49/year for two computers (bold
8                    face in original).

9   38. Despite this statement being partially untrue in retrospect, Plaintiff was misled

10       by Defendant into believing that the Ignition App, which he paid $29.99 for,

11       had been shut down, and would no longer allow him remote access to his

12       desktop at his office.

13  39. Relying on Defendant's statements that remote access would no longer be

14       available to Plaintiff. Plaintiff incurred additional expenses, including travel

15       expenses, cost of fuel, and additional commuting time to and from his

16       physical office, and also lost value stemming from his discontinuation of use

17       of a product he had already paid $29.99 for.

18  40. In inducing Plaintiff to purchase Defendant's app, Defendant did not inform

19       Plaintiff that additional fees beyond the $29.99 already paid to download the

20       app would ever be required to continue usage of Ignition.

21  41. In so misleading Plaintiff and other similarly situated consumers, Defendant

22       deceived Plaintiff and others into believing that the product they paid for was

23       no longer serviceable and available for use, as part of a widespread and

24       systemic ruse to unfairly, fraudulently and unlawfully induce said consumers

25       into purchasing paid subscription services rather than continue using the

26       already purchased, free and clear, Ignition app services, at considerable and

27       previously undisclosed additional expense.

28

1

2

3

4

42. Furthermore, as part of Defendant's systematic efforts to "migrate" its users to paid subscription-based services, Defendant emailed its customers, including Plaintiff, on or about July 17, 2014, and stated as follows:

5

6

7

8

> "While your existing Ignition app will continue to work as it always has, it will no longer receive updates and bug fixes. However, you may switch to the new LogMeIn for iOS/Android app at any time. It's free to download and will work with a Pro account."

9

10

11

12

13

43. Because regular updates and bug fixes are a necessary component of the continued use of any smart phone application, Plaintiff and other consumers' Ignition apps were rendered obsolete by Defendant's decision, forcing them to either discontinue using the services for which they already previously paid, or subscribe to a LogMeIn Pro subscription account, at additional costs.

14

15

16

17

44. In inducing Plaintiff to purchase Defendant's app, Defendant did not inform Plaintiff that additional fees and a subscription to LogMeIn Pro would be required to receive necessary updates and bug fixes for the Ignition App, rendering the Ignition App obsolete and worthless over time.

18

19

20

21

22

23

24

25

26

45. This misrepresentation and omission was material to Plaintiff's purchase of the Ignition application from Defendant, as Plaintiff reasonably believed that such big fixes and software updates would remain available for a reasonable period of time, commensurate with the high price he had paid for Defendant's Ignition application.  Thus, Defendant had a duty to disclose that it reserved the sole right to cease all necessary updates and big fixes, at its sole discretion, at any time for any reason, to Plaintiff and other Ignition consumers, at the time of sale.  Defendant failed to do so.

27

28

46. Regardless of whether Defendant's representations to Plaintiff were true or untrue, such statements had a tendency to mislead Plaintiff and other similarly situated consumers, who relied upon such representations and either ceased

use of the app (saving Defendant additional maintenance expense by way of such misrepresentations), or were mislead into purchasing a LogMeIn Pro subscription at considerable additional expense.

47. Such reliance was reasonable, in light of Defendant's misleading representations.

48. As of August 19, 2014, Plaintiff reasonably believed that he could no longer utilize Defendant's app without paying the undisclosed fee now required by Defendant.

49. Defendant's misleading messages sent to Plaintiff and consumers were part of Defendant's scheme to migrate consumers to a paid subscription service, despite their already having paid in full for a service which purported to provide the exact same services.

50. Furthermore, Plaintiff is not alone; Defendant has improperly induced thousands of other consumers to either discontinue usage of Defendant's app or pay a substantial yearly fee.  This act and omission constitutes unlawful, unfair, and fraudulent conduct under California's Unfair Competition Law, Business & Professions Code §17200 *et seq.* (the "UCL"); and California's False Advertising Law California Bus. & Prof. Code § 17500, et seq. (the "FAL").

## CLASS ALLEGATIONS

51. Plaintiff brings this action on his own behalf, and on behalf of all others similarly situated ("The Class").

52. Plaintiff represents, and is a member of, "The Class" defined as follows: (i) all persons in the State of California; (ii) that purchased Defendant's app, LogMeIn; (iii) at any time prior to January 21, 2014.

53. Defendant and their employees or agents are excluded from the Class.

54. Plaintiff does not know the exact number of persons in the Class, but believes

1
2
them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.

3
4
55. The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

5
6
7
8
9
56. There is a well-defined community of interest in the questions of law and fact involved affecting the members of The Class.  The questions of law and fact common to the Class predominates over questions affecting only individual class members, and include, but are not limited to, the following:

10
11
     a. Whether Defendant's practices are "unfair" as defined by California Business and Professions Code § 17200;

12
13
     b. Whether Defendant's practices are "illegal" as defined by California Business and Professions Code § 17200;

14
15
     c. Whether Defendant's practices are "fraudulent" as defined by California Business and Professions Code § 17200;

16
17
     d. Whether such practice violates California Business and Professions Code § 17200;

18
19
     e. Whether Defendant violated California Bus. & Prof. Code § 17500, et seq.

20
     f. Whether members of the Classes are entitled to declaratory relief; and,

21
     g. Whether members of the Classes are entitled to injunctive relief.

22
57. Plaintiff will fairly and adequately protect the interest of the Classes.

23
24
58. Plaintiff has retained counsel experienced in consumer class action litigation and in handling claims involving unlawful debt collection practices.

25
26
59. Plaintiff's claims are typical of the claims of the Class which all arise from the same operative facts involving Defendant's practices.

27
28
60. A class action is a superior method for the fair and efficient adjudication of this controversy.

61. Class-wide damages are essential to induce Defendant to comply with the federal and State laws alleged in the Complaint.

62. Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

63. Plaintiff and the Class seek injunctive relief against Defendant to prevent Defendant from forcing consumers to purchase a subscription for Defendant's app.

64. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the class as a whole.

65. Members of The Class are likely to unaware of their rights.

66. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

67. Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

FIRST CAUSE OF ACTION

Violation of the California False Advertising Act

(Cal. Bus. & Prof. Code §§ 17500 et seq.)

68. Plaintiff incorporates by reference each allegation set forth above.

69. Pursuant to California Business and Professions Code section 17500, et seq., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

70. Defendant misled consumers by making misrepresentations and untrue

statements about the Ignition App, namely, by instructing Plaintiff and other Class Members that they were purchasing "One app to control all your information" while failing to disclose that the app would be rendered obsolete by Defendant's own business decisions, at a later time, and that considerable subscription fees would be required to continue using the applications.

71. Further, Defendant failed to disclose material facts to Plaintiff and other class members, at the time of their purchase of Ignition, as described in detail above.  Defendant had a duty to disclose the fact that additional fees may apply to Plaintif's purchase, but failed to make such disclosures.

72. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members into paying more for something they reasonably believed they had already purchased.

73. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property.  Plaintiff reasonably relied upon Defendant's representations regarding the Ignition App, namely that the Ignition App was purchased for a one time fee, and would continue to provide remote log in services without any additional payment.  In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the Ignition App.  In turn Plaintiff and other Class Members were provided with an Ignition App that turned out to be of significantly less value than what they were led to believe they had purchased, and therefore Plaintiff and other Class Members have suffered injury in fact.

74. The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and

continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.  Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

SECOND CAUSE OF ACTION

VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

[Against All Defendants]

75.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.  Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

UNFAIR

77.  California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and

practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

78.  In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

79.  Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's unilateral decision to require subscription service for Defendant's app.  Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

80.  Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that the $29.99 paid for Defendant's app would be the only required fee.  Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

81.  Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided.  After Defendant, falsely represented that Defendant's app was available for a flat fee of $29.99, these consumers suffered injury in fact due to Defendant's refusal to continue to make said app available to consumers that paid this fee.  As such,

Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class members to make a payment toward an app only to then require a yearly payment after years of usage. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

82. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

<u>FRAUDULENT</u>

83. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

84. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

85. Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Defendant's agreed to pay the required download fee to use Defendant's app only to be surprised by Defendant's new requirement for a yearly subscription payment. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

86. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

///

1

<u>UNLAWFUL</u>

2

87. California Business and Professions Code Section 17200, et seq. prohibits

3

"any unlawful…business act or practice."

4

88. As explained above, Defendant deceived Plaintiff and other Class Members

5

by representing the Ignition App to be a service that was provided for a one

6

time fee, while also failing to disclose that the app would be rendered obsolete

7

by Defendant's own business decisions, at a later time, and that considerable

8

subscription fees would be required to continue using the applications.

9

89. These representations and omissions by Defendant are therefore an

10

"unlawful" business practice or act under Business and Professions Code

11

Section 17200 et seq.

12

90. Defendant used false advertising, marketing, and misrepresentations to induce

13

Plaintiff and Class Members to purchase the Ignition App.  Had Defendant not

14

falsely advertised, marketed or misrepresented the Ignition App, Plaintiff and

15

Class Members would not have purchased the Class Products, or would have

16

purchased an alternative and appropriate services that provided the services

17

they believed they were purchasing.  Defendant's  conduct therefore caused

18

and continues to cause economic harm to Plaintiff and Class Members.

19

PRAYER FOR RELIEF

20

WHEREFORE, Plaintiff, and The Class Members prays for judgment as follows:

21

- Certifying the Class as requested herein;

22

- Providing such further relief as may be just and proper.

23

In addition, Plaintiff, The Class Members and the Sub-Class Members pray

24

for further judgment as follows:

25

- Restitution of the funds improperly obtained by Defendant;

26

- Any and all statutory enhanced damages;

27

- All reasonable and necessary attorneys' fees and costs provided by

28

statute, common law or the Court's inherent power;

- For equitable and injunctive and pursuant to California Business and Professions Code § 17203; and,

- Any and all other relief that this Court deems just and proper.

Dated**:** February 17, 2014              **Law Offices of Todd M. Friedman, P.C.**

                                        By:_/s/ Adrian R. Bacon____
                                            Todd M. Friedman, Esq.
                                            Adrian R. Bacon, Esq.
                                            Attorneys for Plaintiff

TRIAL BY JURY

91.  Pursuant to the seventh amendment to the Constitution of the United States of

    America, Plaintiff and The Class are entitled to, and demand, a trial by jury.

Dated**:** May 6, 2015              **Law Offices of Todd M. Friedman, P.C.**

                                        By:_/s/ Adrian R. Bacon____
                                            Todd M. Friedman, Esq.
                                            Adrian R. Bacon, Esq.
                                            Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

Filed electronically on this 6th day of May, 2015, with:

United States District Court CM/ECF system

Notification sent electronically on this 6th day of May, 2015, to:

Honorable Judge Jennifer L. Thurston
United States District Court
Eastern District of California

William Trach
william.trach@lw.com
Brian T. Glennon
brian.glennon@lw.com
James H. Moon
james.moon@lw.com
LATHAM & WATKINS LLP

s/Todd M. Friedman
Todd M. Friedman