UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN HANDY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>LOGMEIN, INC.,<br><br>        Defendant. | Case No.: 1:14-cv-01355 - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. 48) |

LogMeIn, Inc. has marketed two products which allow users to remotely access the user's desktop computer via a virtual private network.[1] One product, LogMeInFree, was provided free of charge and allowed access to the remote desktop computer from another laptop or desktop computer. The second product, Ignition, allowed access using a tablet or smart phone and sold for $29.99.

Plaintiff obtained LogMeInFree at some point in the past. Later in 2010, he purchased Ignition. Four years after that, Defendant discontinued the LogMeInFree product. Plaintiff claims that when marketing Ignition, Defendant should have informed prospective purchasers that LogMeInFree could be eliminated in the future. By failing to do so, Plaintiff contends he was induced to purchase the Ignition app only to be left with a situation in which he must use two VPNs—Defendant's VPN to access his employer's network using a mobile computing device and a different

---

[1] A typical example of a VPN is one in which it provides a secure, private connection via the Internet, between a remote user and his employer's network. It allows the remote user to access the employer's network—and, hence, to work remotely—with the same computing ability as if the user was sitting at his desk at the employer's brick-and-mortar office.

VPN to do so using via his laptop—or to abandon the use of Ignition and obtain a competitor's product which will provide VPN access via a laptop or mobile device.

Defendant seeks dismissal of the second amended complaint based upon the argument that it fails to meet the heightened pleading standard for fraud claims and fails to state a claim in light of the new factual allegations set forth in the complaint.  (Doc. 48)

The Court heard the oral arguments of the parties at a hearing on July 24, 2015.  Because the Court finds Plaintiff has failed to provide sufficient factual detail to state the claims he identifies, Defendant's motion is **GRANTED with leave to amend**.

## I.     Factual Allegations

Plaintiff alleges he purchased an application called "Ignition" from Defendant for $29.99 on April 4, 2010.  (Doc. 46 at 3, ¶ 14)  Ignition allowed its users to access a desktop computer remotely via an iPhone or iPad. Id. at 3 ¶ 14. Plaintiff alleges Ignition was advertised by Defendant as "[o]ne app to control all your information," manage files, expand an iPad's possibilities, and "to be more productive." Id. at 6-7, ¶¶ 24-27.  Plaintiff alleges the advertising explained: "With one touch, you can directly control all of your computers from your iPad or iPhone.  It's anywhere, anytime access to everything on your PC or Mac – all your files, applications and desktops – right at your fingertips." Id. at 7, ¶ 24.  Plaintiff asserts that when he purchased Ignition, he "relied upon Defendant's representations (both by omission and affirmative misleading statements as described in more detail below) that this fee would permit Plaintiff to use Defendant's app uninterrupted and for the foreseeable future without the requirement of further payments or additional fees." (Doc. 19 at 4, ¶ 15.)

Before buying Ignition, Plaintiff had obtained and was using "LogMeIn Free" which allowed its users "to remotely access a desktop PC from a remote location, by using another desktop or laptop computer, which was connected to the Internet." (Doc. 46 at 4, ¶¶ 15-16)  Plaintiff reports that other advertisements related to Ignition emphasized the value of mobile computing by using a smart phone or tablet to access remote desktop computers. Id. at 6-7, ¶¶ 24-27.  For example, the advertisements focused on the ability of purchasers to "access your computer or to work with your files on the go" and reported that the product allowed users to "grab files from your computer and save them directly to your iPad/iPhone to create your own file system. And you can use your iPad/iPhone to transfer files

1  between computers. With everything you need in the palm of your hand, you're free to go." Id.
2  Plaintiff does not allege he saw these advertisements or that he relied upon them. Plaintiff *does* allege
3  that when he purchased Ignition, he understood that it was "a premium and supplemental companion
4  product" to the "PC-based offering," LogMeIn Free. Id. at 4, ¶ 15.
5       Sometime before January 21, 2014, Defendant introduced a third product, "LogMeIn Pro."
6  (Doc. 46 at 4 ¶ 17)  It provided additional, advanced features such as "remote printing and file sharing"
7  but it required a subscription and payment of an annual fee. Id.  Most of Defendant's customers did not
8  choose, initially, to subscribe to LogMeIn Pro and continued to use LogMeIn Free and Ignition.  Id.
9       On January 21, 2014, "Defendant posted [a] message on its website, stating '[s]tarting in
10 January, we will gradually migrate users of LogMeIn-branded remote access offerings and Ignition-
11 branded remote access offerings to a single, premium access product.'"  (Doc. 46 at 8, ¶ 33)  Defendant
12 explained that this would occur, "In order to address the evolving needs of our customers, we will be
13 unifying our portfolio of free and premium remote access products into a paid-only offering." Id. at 8,
14 ¶ 34.  Defendant explained that "[t]o continue using remote access, [Plaintiff would] need to purchase
15 an account-level subscription of LogMeIn Pro . . ." Id. at 8 ¶ 35.  Plaintiff does not claim he viewed this
16 message or was aware of it before filing this litigation.
17      Sometime after this, Plaintiff attempted to log into his LogMeInFree account only to receive the
18 following message,
19    **You no longer have access to your computers.**
20    In order to continue using remote access, you'll need to purchase an account
      subscription of LogMeIn Pro. But you can still take advantage of discounted
21    introductory pricing, with packages starting at $49/year for two computers . . .
22 (Doc. 46 at 9, ¶ 37)  Though Plaintiff has since learned that this statement was "partially untrue," he
23 alleges that he believed this statement meant that he could no longer use the Ignition app and, as a
24 result, he no longer worked remotely but, instead, traveled to his physical office which caused him to
25 incur costs. (Id. at 9, ¶ 39)
26      On July 17, 2014, Defendant sent customers, including Plaintiff, an e-mail which read, "While
27 your existing Ignition app will continue to work as it always has, it will no longer receive updates and
28 bug fixes. However, you may switch to the new LogMeIn for iOS/Android app at any time. It's free to

download and will work with a Pro account." (Doc. 46 at 10 ¶ 42) Plaintiff contends that because updates and bug fixes "are a necessary component of the continued use of any smart phone application," Defendant's decision has rendered the app obsolete. Id.

Plaintiff alleges that Defendant's ability to stop offering updates and bug fixes without an additional cost was a material omission that would have influenced his decision not to buy Ignition. (Doc. 46 at 10 ¶ 45) He claims further that Defendant's discontinuance of providing updates and bug fixes–whether this service has, in fact been discontinued—caused him to stop using the app on August 19, 2014 and mislead others into subscribing to LogMeIn Pro. Id. at 10-11 ¶¶ 46-50.

Plaintiff alleges that when he bought Ignition, he believed that the LogMeIn Free app "would remain available" and without cost and that he relied upon this fact when deciding to buy Ignition. (Doc. 46 at 5, ¶ 19) Plaintiff explains that,

> Defendant did not warn Plaintiff, nor consumers similarly situated, that further fees may apply to ensure uninterrupted usage of Defendant's app, or that Defendant's app may, at a later time, be rendered obsolete by Defendant's own affirmative business practices. These business practices include, as discussed in more detail below, changing the pricing model for companion services in a material fashion, and charging Plaintiff and other similarly situated consumers undisclosed and unexpected fees to continue their same level of use of service.

Id. Plaintiff claims that had he known that LogMeIn Free would stop being available or that the service of providing bug fixes and updates to Ignition could be discontinued in the future, he would have "reconsidered" the purchase of Ignition. Id. at 5 ¶ 20.

Defendant has provided the "Terms and Conditions of Use" that were in effect when Plaintiff purchased Ignition and which "was presented to users when they signed up for LogMeIn Free."[2] (Doc. 48-1) Users indicated their acceptance of the terms "BY COMPLETING THE ELECTRONIC ACCEPTANCE PROCESS, CLICKING THE "SUBMIT" OR "ACCEPT" BUTTONS, SIGNING, USING ANY OF THE PRODUCTS OR OTHERWISE INDICATING YOUR ACCEPTANCE OF THESE TERMS . . ." Id. at 4. Use of LogMeIn Free is "subject to the provisions" set forth in the

---

[2] Plaintiff's objections (Doc. 53) to this evidence are **OVERRULED.** Plaintiff's objections are not supported by relevant argument. Moreover, the Terms and Conditions are authenticated by Ms. Haas and she has sufficient personal knowledge to know whether they were in effect when Plaintiff purchased the Ignition app. The document is keenly relevant as it bears on whether Defendant gave notice of the possible termination of LogMeInFree at the time Plaintiff was contemplating purchasing the Ignition app.

document and the "Terms and Conditions of Use" are presented to the users "when they sign up for LogMeIn Free." Id. at 2, ¶ 2. Notably, the Terms included the ability of Defendant "to modify or discontinue any Product for any reason or no reason with or without notice to You or the Contracting Party. LMI shall not be liable to You or the Contracting Party or any third party should LMI exercise its right to revise these Terms or modify or discontinue a Product." Id. at 5, ¶ 3. Likewise, the Terms and Conditions of Use provide, "LMI may in its sole discretion immediately terminate these Terms and this subscription, license and right to use any Product if . . . LMI decides, in its sole discretion, to discontinue offering the Product. LMI shall not be liable to You, the Contracting Party or any third party for termination of the Service or use of the Products . . ." Id. at 10-11, ¶ 10.

Plaintiff asserts that he does not recall being prompted to visit the LogMeIn website or being asked to review the Terms and Conditions prior to or after buying the Ignition App. (Doc. 52-1 at 2) Plaintiff reports that he was never required to review the Terms and Conditions during his usage of Ignition and never did so. Id. He reiterates that had he known that the ability to use LogMeInFree would be precluded in the future, he would not have purchased the Ignition App. Id. at 2-3. Notably, Plaintiff does not address whether he reviewed the Terms and Conditions when he obtained LogMeInFree or whether they were presented to him.

In this motion, Defendant argues Plaintiff has failed to meet the heightened pleading standard for fraud and has failed to demonstrate any misrepresentation made by it or any omission it was obligated to make and, as a result, has failed to state a claim.

### III.   Legal Standards

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted). Further, allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to officer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). However, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). Leave to amend should not be granted if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

In considering a Rule 12 motion, generally the Court is limited to considering only the allegations of the pleading. However, where the Court considers evidence presented by a party that is outside the pleading, the Court must treat the motion as one brought under Rule 56. Fed. R. Civ. P. 12(d). Here, in determining the Court would consider the declaration of Tara Haas, the Court has permitted Plaintiff to submit countering evidence. (Doc. 51)

**IV.     Heightened Pleading Standards**

When the complaint asserts that the defendants engaged in "a unified course of fraudulent conduct" and relies upon that conduct to support a claim, the claim is "grounded in fraud" and must satisfy the particularity requirement of Rule 9. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The heightened pleading standards apply even where fraud is not an element of a claim. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) requires the

6

complaint to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The factual allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Plaintiff's claims under California Business and Professions Code §§ 17200 and 17500 are subject to the heightened pleading standards because they rest upon claims that the defendant engaged in in acts of knowing deception. *See Kearns*, 576 F.3d at 1125 (holding "Rule 9(b)'s particularity requirement applies" to claims raised under Cal. Bus. & Prof. Code § 17200); *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp.2d 1073, 1085-86 (E.D. Cal. 2009) (where the plaintiff alleged the defendant knowingly made misrepresentations to the public and "engaged in a fraudulent course of conduct," the plaintiff was required to meet the heightened requirements of Rule 9(b) to state a claim under Cal. Bus. & Prof Code § 17500); *Lanini v. JPMorgan Chase Bank*, 2014 U.S. Dist. LEXIS 47348 at *33 (E.D. Cal. Apr. 4, 2014) (dismissing the plaintiffs' claim for a violation of Cal. Bus. & Prof. Code §17200 for failure to meet the Rule 9(b) pleading requirements).

The heightened pleading standard of Rule 9(b) requires that "[a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004); *see also Kearns*, 567 F.3d at 1126 (the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged"). Only factual allegations, rather than mere conclusions satisfy this pleading burden. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989). If the factual allegations do not meet the heightened pleading standard, the "averments . . . should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

**V.    Discussion and Analysis**

    **A.    Applicable statutes**

        **i.    False Advertising Law**

California's False Advertising Law prohibits any person or entity from making an untrue and misleading statement in advertising. Cal. Bus. & Prof. Code § 17500. It is unlawful for any company to make any statement concerning products offered, which is known or should be known, to be untrue

or misleading. Cal. Bus. & Prof. Code § 17500. A false advertising claim under this section may be brought "where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332 (1998). Thus, the FAL proscribes "not only those advertisements which have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *Id.* (emphasis omitted). In addition, a plaintiff may state a claim under the FAL for fraudulent omissions by a defendant. *See Ehrlich v. BMW of North Am.*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010).

To state a cognizable claim for a fraudulent omission, a plaintiff must allege the defendant's omission was "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." *Ehrlich*, 801 F. Supp. 2d at 916 (quoting *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007)); *see also Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 835 (2006). Under California law,

> There are four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

*LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (quoting *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1986)). To demonstrate "exclusive knowledge by the defendant," a plaintiff must provide sufficient factual allegations to support his claim that at the making of the contract, the defendant was aware of facts which could not be known by the plaintiff and which, if known, would dissuade the plaintiff from completing the purchase. *See Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 927 (N.D. Cal. 2012).

To demonstrate active concealment by a seller, a plaintiff must allege sufficient factual support for five elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007). A fact is deemed material "if a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal.App.4th 249, 256 (2011) (internal quotation marks, citation omitted); *see also Elias v. Hewlett-Packard Co.*, 950 F.Supp.2d 1123, 1134-35 (N.D. Cal. 2013) (same).

### ii. Unfair Competition Law

California's Unfair Competition Law prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  To have standing to state a claim under either statute, a plaintiff must have suffered an injury in fact, which may be shown when he or she "(1) expended money due to the defendant's acts . . .; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010).  To state a cognizable claim, the plaintiff must allege that he relied upon the misrepresentation or material omission and that it was the immediate cause of the economic injury.  *Id.*; *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066 *5-6 (N.D. Cal. 2014); *Kelly v. BP W. Coast Products LLC*, 2014 WL 7409220, at *8 (E.D. Cal. Dec. 30, 2014) ["The term "bait-and-switch" describes a scheme in which the fraudster lures in his victims "with glib salesmanship," never intending to deliver the product advertised, carefully laying and springing his trap."].  Likewise, the plaintiff must allege facts sufficient to demonstrate the defendant's representations "are likely to deceive a reasonable consumer." *Red v. Kraft Foods, Inc.,* 2012 U.S. Dist. LEXIS 164461 at *6, 2012 WL 5502754 (C.D. Cal. Oct. 25, 2012) (citing *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)).  Thus, the relevant statements/omissions are evaluated under the "reasonable consumer test." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

Actions prohibited by § 17200 include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838-39 (1994).  Thus, the "unlawful" prong requires an underlying violation of law. *Krantz v. BT Visual Images*, 89 Cal.App.4th 164, 178 (2001). An "unfair" practice under section 17200 is one "whose harm to the victim outweighs its benefits." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994).  A "fraudulent" practice under § 17200 is "one which is likely to deceive the public,"

and "may be based on misrepresentations … which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1474, 49 Cal.Rptr.3d 227 (2006). The Unfair Competition Law and False Advertising are related such that "any violation of the false advertising law . . . necessarily violates the UCL.'" *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983)).

### B. Plaintiff's claims

As in its last motion, Defendant argues that Plaintiff has failed to identify any affirmative misrepresentation made by it when he purchased the Ignition app. (Doc. 48 at 12) Notably, Plaintiff alleges Defendant made "representation (both by omission and affirmative misleading statements as described in more detail below)." (Doc. 46 at 5 ¶ 19) However, the exact affirmative representation(s) at issue is not immediately clear from the second amended complaint. In his opposing papers, Plaintiff clarifies that this is a case centered on Defendant's material omissions relating to the purchase of Ignition and its inextricable companion products and services, not on affirmative misrepresentations" and further states, "Plaintiff's affirmative misrepresentation claims focus only on a subsequent false and deceptive practice: the misleading statements that LogMeIn sent to its Ignition customers in early 2014, regarding its cancellation of companion services." (Doc. 50 at 16)

Seemingly, then, Plaintiff contends: 1.) The advertisements related to Ignition failed to indicate that LogMeInFree could be discontinued in the future; 2.) Defendant failed to inform prospective Ignition purchasers that LogMeInFree could be terminated at in the future; 3.) Defendant failed to inform prospective purchasers of the Ignition app that it could stop providing updates and bug fixes in the future; and  4.) Defendant failed to inform prospective Ignition app purchasers they the Ignition app would no longer work in the future unless users paid additional sums for the functions they received already through the combined use of the Ignition app and LogMeInFree.

### i.   **Defendant's advertisements related to the Ignition app made no assurances about LogMeInFree nor were they obligated to do so**

Though Plaintiff sets forth the body of Defendant's advertisements related to Ignition, he does not allege that he saw these before he purchased the Ignition app or that he relied upon them. Id. at 6-7,

¶¶ 24-28. This is fatal to his claim. *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1366-1367 (2010). In any event, the language of these advertisements is directed *only* to the Ignition app and they make no representations related to LogMeIn Free. (Doc. 46 at 6-7, ¶ 24)  Indeed, Plaintiff admits the advertisements related to the Ignition app. Id. at 6.  Moreover, the allegations make clear that the advertisements asserted that Ignition was "[o]ne app to control all your information," "One app to manage your files" and "One app to expand you iPad's possibilities." Id.  Thus, given the language of the advertisements which refer to "one app," Plaintiff's contention that they related to two different products—the Ignition app and the LogMeInFree—is unreasonable and contrary to the plain meaning of the words.  Whether a practice is deceptive is generally a question of fact.  However, where, as here, deception can be found only through ignoring the plain meaning of the words, the Court finds that the advertisements could not possibly have encouraged a reasonable consumer to believe that by buying Ignition the purchaser also bought assurances related to the continuation of the LogMeInFree app.

On the other hand, Plaintiff alleges that Defendant failed to notify purchasers of the Ignition app that LogMeInFree could be discontinued in the future.  However, despite Plaintiff's conclusion that LogMeInFree and the Ignition app are "companion" services, there is no factual support for this.  To the contrary, as Plaintiff admits, they serve different needs using different technological methods. Plaintiff admits that LogMeInFree allows users to access their desktop computer (such as an office computer) from another desktop or laptop computer (such as a home computer).  (Doc. 46 at 4, ¶ 16)  On the other hand, the Ignition app allows the user to access the desktop computer with a tablet or a smart phone.  (Doc. 46 at 3, ¶ 14.)  While many users may have had the need for both products, either could be used regardless of whether the user had also obtained or used the second product.  Given this, Plaintiff's conclusion that any communication by Defendant as to either product by necessity applied to both, is unsupported in the second amended complaint.

Finally, the first cause of action asserts, without any supporting factual allegations, that Plaintiff "relied upon Defendant's representations regarding the Ignition App, namely that the Ignition App was purchased for a one time [sic] fee, and would continue to provide remote log in services without any additional payment." (Doc. 46 at 14, ¶ 73)  Other than the advertisements cited by Plaintiff, the second amended complaint fails to identify any affirmative statement made by Defendant at the time of

11

Plaintiff's purchase of the Ignition app, let alone one that assured providing updates and bug fixes.

### ii. Defendant provided notice that LogMeInFree could be terminated

Though Plaintiff argues strongly that the Terms and Conditions[3] set forth by Defendant were not binding as a "browsewrap[4]," this argument misses the point. Whether the Terms and Conditions constituted an enforceable contract is irrelevant to whether the Terms and Conditions related to LogMeInFree provided notice to prospective purchasers of the Ignition app that LogMeInFree could be discontinued. (Doc. 48-1 at 2, 5, 10) Notably, the thrust of Plaintiff's complaint in great part relies upon the claim that Defendant failed to give notice that LogMeInFree could be discontinued. (Doc. 46 at 5-7, 9-10 ¶¶ 19, 20, 21, 23, 24, 29, 44 ["Defendant therefore had a duty to disclose that it would, or might, later materially alter its pricing model and/or servicing model for companion products and services, which would impact consumers' use of the products they were purchasing (i.e. Ignition)."], 40.) Indeed, Plaintiff recites repeatedly in his second amended complaint that, "had he known" or "had Defendant warned," that the LogMeInFree app could be terminated, he would not have purchased the Ignition app and seems to suggest that only actual notice forced on him by Defendant would suffice. (Doc. 52 at 3) Thus, the fact that Defendant posted on its website information that told users that LogMeInFree could be terminated undermines Plaintiff's claims. Though this information was not forced on Plaintiff through a clickwrap, the evidence makes clear that Defendant *did* publish the fact that it reserved the right to terminate the free app, LogMeInFree.

On the other hand, in light of the fact that LogMeInFree and the Ignition app were separate,

---

[3] Though Plaintiff's counsel objects to the Terms and Conditions as not authenticated, he admits that he located a copy on Defendant's website. (Doc. 52 at 3, n. 3) Moreover, Plaintiff argues that it took "a great deal of searching" to find them, he cites the website which makes clear only two clicks were required to locate them: first on "policies" and then on "ignitiontermsandconditions."

[4] The term, "browsewrap" refers to a situation in which "a website owner seeks to bind website users to terms and conditions by posting the terms somewhere on the website, usually accessible through a hyperlink located somewhere on the website." *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1063 (D. Nev. 2012). In contrast, a "clickwrap" requires the purchaser to affirmatively accept the terms before purchase occurs.

In the cases cited by Plaintiff, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-1176 (9th Cir. 2014), *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) and *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 38 (2d Cir. 2002), each addressed the enforceability of terms—specifically arbitration clauses—set forth in a browsewrap. In each and in In re Zappos, cited above, the courts held that the terms and conditions set forth on the website, which required agreement to arbitrate disputes, were not enforceable because the user was not required to manifest any assent to the terms. Here, there is no effort by Defendant to bind Plaintiff to the terms but, instead, to demonstrate merely that it posted notice of their policies.

standalone products that could be used independently[5], there is an insufficient showing that information related to the future termination of LogMeInFree constituted a material omission when selling the Ignition app.

### iii. As pleaded, terminating the service of providing updates and bug fixes does not violate the FAL/UCL

Plaintiff claims that had he known that Defendant would stop providing software updates and bug fixes, he would not have purchased the Ignition app. Notably, the second amended complaint does not set forth the basis for Plaintiff's beliefs that this service would be provided in connection with the purchase of the Ignition app. Instead, he alleges only that this service is "a necessary component of the continued use of any smart phone application . . ." (Doc. 46 at 10, ¶ 42) Moreover, it appears that until at least until July 17, 2014, Defendant provided this service to users of the Ignition app. Id. Seemingly, then, Plaintiff contends that the obligation to provide this service was implicit in the purchase contract in which Plaintiff agreed to pay not only for the Ignition app as it was configured on April 4, 2010 but also to pay for all updates and bug fixes that would be needed in the future. Thus, it appears that Plaintiff is attempting to rely upon a breach of contract to demonstrate the UCL violation.

In the second amended complaint, Plaintiff *concludes* that the failure to expressly indicate that the service of providing updates and bug fixes constitutes a "systemic ruse to unfairly, fraudulently and unlawfully induce consumers into purchasing paid subscription services . . ." (Doc. 44 at 9, ¶ 41) Nevertheless, a breach of contract is not sufficiently "unlawful" for purposes of the UCL. *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F.Supp.2d 1094, 1110 (E.D. Cal. 2010) ["An act that breaches a contract may also breach the UCL, but only when the act is unfair, unlawful of fraudulent for some additional reason."]

On the other hand, Plaintiff has failed to provide any factual support that Defendant acted unfairly, fraudulently or unlawfully at the time that Plaintiff purchased the Ignition app in 2010. For example, there are no factual allegations that Defendant knew it would discontinue the service of

---

[5] Plaintiff admits implicitly that he had a LogMeInFree "account" that was separate from his "Ignition" account. (Doc. 46 at 9 ["Plaintiff received a message from Defendant when trying to log into **his LogMeInFree account** on his computer . . ." (emphasis added)] This provide further support that these were two, separate products.

13

providing updates and bug fixes at some relevant future date in 2010 when Plaintiff purchased the Ignition app.  To the contrary, the fact that Plaintiff received four years of updates and bug fixes undercuts this claim as well as the claim that Defendant acted unfairly.  Absent this type of factual allegation, there is no active concealment of a material fact and, therefore, no claim stated under the FAL or the UCL.

      **iv.**      **Plaintiff has failed to state a claim related to Defendant's failure to inform Ignition purchasers that they would have to pay more in the future for the services provided by both products**

For the reasons stated above, Plaintiff has failed to state a claim in this regard.  Specifically, there is no factual information alleged that Defendant knew at the time it sold the Ignition app to Plaintiff that it would discontinue support for the app or that it would "migrate" its users to a subscription-only plan in the future.  Additionally, there was no obligation to tell prospective purchasers of the Ignition app anything about the intended "life" of LogMeInFree but, even if there was, Defendant posted this information on its website.

On the other hand, though Plaintiff alleges that in and around January 2014 Defendant posted one or more notices on its website indicating an intention to migrate users of the free and paid products to a subscription service, Plaintiff does not claim that he saw these notices or that he relied upon them.  (Doc. 46 at 7-9, ¶¶ 29-36)  He does not claim that these notices caused him any injury.  To the contrary, it appears that despite these notices, Plaintiff continued to use the Ignition app until sometime after July 2014.  (Doc. 46 at 9, ¶ 37)

Moreover, as noted above, Plaintiff alleges that in at some time 2014, he opened his LogMeInFree account and received a message indicating, "You no longer have access to your computers" and it encouraged him to purchase a subscription that would allow the access.  (Doc. 46 at 9, ¶ 37)  After reading this, Plaintiff alleges he was misled into believing he could no longer use his Ignition app to access his computer. *Id*. at 9, ¶ 10.  However, Plaintiff fails to provide any factual allegation that would support the reasonableness of his belief or in what regard he was misled.  Instead, it appears that the Ignition app worked at that time and continued to work through today. *Id*. at 9, ¶ 37.

Notably, in his first amended complaint and at the hearing on the prior motion to dismiss,

Plaintiff's counsel affirmatively represented to the Court that the message described here encountered by Plaintiff was provided via the Ignition app. If true, it would have been quite reasonable for Plaintiff to conclude that he could not use the Ignition app. However, with the admission now in the second amended complaint that this message was not given in relation to the Ignition app, there is no support that Plaintiff acted reasonably in simply deciding that the Ignition app was unavailable.

## VI. Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1. Defendant's motion to dismiss (Doc. 48) is **GRANTED** with the Court granting <u>one final opportunity</u> to amend the complaint;

2. Plaintiff is reminded of his obligation of investigation *prior* to filing a pleading. Toward this end, **no later than July 31, 2015**, Plaintiff **SHALL** provide to Defendant his user name and password for his LogMeInFree account. Defendant **SHALL** use this information **only** to determine whether Plaintiff affirmatively accepted the "Terms and Conditions" of LogMeInFree if this is possible and/or whether *every* user of LogMeInFree was required to accept the terms during the time period that Plaintiff obtained LogMeInFree. Defendant **SHALL** provide the results of its determination in this regard to Plaintiff's counsel **no later than August 7, 2015**;

3. If after reviewing the information provided by Defendant Plaintiff has a good faith basis to continue to pursue this matter, he may file a third amended complaint no later than **September 18, 2015**.

IT IS SO ORDERED.

Dated:   **July 24, 2015**            /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE